UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-27-2015

PRL USA HOLDINGS, INC.,

                              Plaintiff,

        -v-

UNITED STATES POLO ASSOCIATION,
INC., USPA PROPERTIES, INC., AND JRA
TRADEMARK COMPANY, LTD.,

                              Defendants.

No. 14-cv-764 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

        Plaintiff PRL USA Holdings, Inc. ("PRL") brings this action against Defendants United

States Polo Association, Inc. ("USPA"), USPA Properties, Inc., and JRA Trademark Company

Ltd., for violations of the Lanham Act, the New York General Business Law, and New York state

common law, and for contempt of this Court's prior orders related to the parties' ongoing

trademark disputes.  Now before the Court is Defendants' motion to compel arbitration or, in the

alternative, to dismiss certain claims stated in the complaint.  For the reasons that follow, the

motion is GRANTED in part and DENIED in part.

I. BACKGROUND[1]

        This dispute is the latest in a thirty-year battle between PRL and USPA.  As virtually every

consumer knows, PRL designs, markets, and distributes apparel, home furnishings, fragrances,

and accessories under the name Ralph Lauren.  It frequently employs as a trademark the "Polo

---

[1] The following facts are drawn principally from Plaintiff's complaint and attached exhibits.  (Doc. No. 1 ("Compl.").)
In deciding Defendants' instant motion, the Court has also considered Defendants' Motion to Compel Arbitration
and/or to Dismiss Certain Claims in the Complaint (Doc. No. 37 ("Def. Mem.")), Plaintiff's Memorandum of Law in
Opposition (Doc. No. 41 ("Opp'n.")), Defendants' Reply (Doc. No. 44 ("Def. Reply")), and the documents submitted
in support thereof (Doc. Nos. 36, 38–39, 42–43, 45).

Player Logo," which depicts a rider with an upright polo mallet atop a horse. (Compl. ¶¶ 9–10.) The Polo Player Logo has appeared on Ralph Lauren products since the 1960s. (*Id.* ¶ 10.) By contrast, Defendant USPA was founded in 1890 and is the governing body of the sport of polo in the United States. (*Id.* ¶ 2.) Nonetheless, through its wholly-owned subsidiary, United States Polo Association Properties, Inc., USPA also registers trademarks and licenses for retail product sales in many of the same categories of goods as PRL. (*Id.* ¶ 3.) For several decades, USPA has identified its products with various permutations of a logo featuring two overlapping mounted polo players, referred to collectively as USPA's "Double Horsemen Mark." (*Id.* ¶ 21.)

In 1984, USPA and its licensees brought an action in the United States District Court for the Southern District of New York for a declaratory judgment against PRL, asking the Court to find that various articles of merchandise bearing USPA's newest version of its trademarked Double Horsemen Mark – a mounted polo player with lowered polo mallet preparing to strike a ball – did not infringe PRL's Polo Player Logo; PRL counterclaimed for trademark infringement. (*Id.* ¶¶ 18–19); *U.S. Polo Ass'n, Inc. v. Polo Fashions, Inc.*, No. 84-cv-1142 (LBS), 1984 WL 1309, at *5 (S.D.N.Y. Dec. 6, 1984) (describing the 1984 version of the Double Horsemen Mark). Judge Sand, adjudicating both claims, entered an order enjoining USPA from infringing on PRL's marks – including its Polo Player Logo and the word "POLO." (*Id.* ¶ 19.) The Court, however, permitted USPA to license its "USPA" name, "a mounted polo player or equestrian or equine symbol which is distinctive from . . . [PRL's] polo player symbol in its content and perspective," and the word "polo" in reference to the sport of polo in its retail sales. (*Id.*, Ex. B at ¶¶ 8–9 (setting forth Judge Sand's 1984 order)).

Later, in 2000, PRL brought a lawsuit in the Southern District of New York against the USPA and its master licensee affiliates seeking to bar the use of USPA's name, its newly redesigned trademarks, and other logos on apparel and related products. (Compl. ¶ 22.) The

litigation involved merchandise identified by class, including watches, leather products, clothing, and sporting items related to polo. (*Id.*) Prior to a trial before Judge Daniels, however, the parties entered into a partial settlement that permitted USPA to use its name and certain other logos on apparel, leather goods, and watches. (*Id.* ¶ 23; *see also* Declaration of Andrea L. Calvaruso, dated June 6, 2014, Doc. No. 42, Ex. A ("Settlement Agreement").) The Settlement Agreement incorporated by reference Judge Sand's order from the 1984 case and established dispute resolution mechanisms for later contests. As relevant here, the Settlement Agreement contained an arbitration provision stating:

> [T]he parties agree that the sole remedy for any dispute, action, claim, or controversy of any kind hereafter arising between PRL on the one hand and any of the USPA Parties on the other hand . . . in any way arising out of, pertaining to, or in connection with this Settlement Agreement (including, but not limited to, any claims for breach of this Settlement Agreement, claims that the party's trademark and/or trade dress rights have been infringed, and/or claims for federal or state unfair competition and/or dilution that fall with[in] the Settlement Agreement) shall be resolved by arbitration pursuant to the procedures set forth below.

(Settlement Agreement ¶ 16.) The agreement further provided that:

> Any arbitration proceeding between the parties . . . shall be administered by the American Arbitration Association ("AAA") under the Commercial Rules in the City and State of New York . . . .

(*Id.* ¶ 16C.)

Notwithstanding the Settlement Agreement, the parties could not agree as to whether four particular USPA marks infringed on the PRL trademark, and they proceeded to a jury trial on those issues, agreeing in advance that the use of any symbols the jury found non-infringing would be governed by the terms of the Settlement Agreement. (Compl. ¶ 23.) Approximately one year later, a jury determined that: (1) USPA's Double Horseman Mark design featuring a solid image of two overlapping polo players, one with mallet lowered and the other with mallet raised, infringed PRL's Polo Player Logo trademark, but (2) the same solid Double Horsemen Mark with "USPA" written below and an outlined version of the Double Horsemen Mark, both with and without

3

"USPA" written below, did not infringe PRL's Polo Player Logo trademark. (*Id.* ¶¶ 23–25.) Judge Daniels entered an order consistent with the verdict shortly thereafter ("2005 Judgment"). (*Id.* ¶ 26.) The Settlement Agreement, by incorporating the jury's finding and the 2005 Judgment, prohibited the use of the infringing marks in all but two countries worldwide. (Settlement Agreement ¶ 19J.)

In 2009, the saga began anew. USPA filed a complaint for declaratory judgment in the Southern District of New York, seeking the right to license and sell fragrance products bearing a solid Double Horsemen Mark, with "U.S. POLO ASSN." arching above, and the year "1890" – the date of USPA's founding – below. (Compl. ¶¶ 27–28.) After a bench trial, Judge Sweet found that "USPA's use of the Double Horsemen Mark along with the word mark 'U.S. POLO ASSN.' in the context of men's fragrances created a strong likelihood of confusion with the PRL Parties' products" and infringed PRL's trademarks. *U.S. Polo Ass'n et al. v. PRL USA Holdings, Inc., et al.*, 800 F. Supp. 2d 515, 538 (S.D.N.Y. 2011). Accordingly, in March 2012, the Court enjoined USPA and its co-defendants from:

> Using the PRL marks or any other name or mark, including the image of one or more mounted polo players, that constitutes a colorable imitation of or is confusingly similar to PRL's Polo Player Logo . . . or "POLO" word mark in connection with the sale or offering for sale of any goods or rendering of any services.

(Compl., Ex. D ("2012 Injunction") ¶ 3(c)). The Second Circuit upheld the injunction and directed Defendants to "maintain a safe distance" from PRL's marks. *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 511 Fed. App'x 81, 86 (2d Cir. 2013).

Shortly thereafter, in 2012, PRL brought a motion for sanctions and contempt of the injunction, based upon the USPA's sale of eyewear bearing logos, which according to PRL, were colorable imitations of PRL's Polo Player Logo. Judge Sweet held that the Double Horsemen Mark used on USPA sunglasses was indeed a "colorable imitation" of PRL's trademark and found

USPA in contempt of his prior injunction. *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, No. 09-cv-9476 (RWS), 2013 WL 837565, at \*15 (S.D.N.Y. Mar. 6, 2013).

PRL filed the complaint in this action on February 6, 2014, asserting that USPA had again infringed its trademarks, this time with respect to retail sales services and bedding. Accordingly, PRL claimed that Defendants were in contempt of the Court's 2005 Judgment and 2012 Injunction (Counts I, II, and XIII) and that Defendants' conduct constituted willful infringement of PRL's marks under the Lanham Act (Counts III and IV), dilution of PRL's marks under the Lanham Act (Counts V and VI), unfair competition and false designation under the Lanham Act (Counts VII and VIII), unfair competition under the common law (Counts IX and X), and dilution under the New York General Business Law (Counts XI and XII). (Compl. ¶¶ 74–145.)

Defendants filed their motion to dismiss certain claims and compel arbitration on May 16, 2014. (Doc. No. 36.) The issue presented by the instant motion is whether Defendants can compel arbitration of PRL's claims related to retail sales services and specified product sales under the terms of the Settlement Agreement. Defendants do not seek to compel arbitration of, or to dismiss, claims related to bedding products, alleged in Counts II, IV, VIII, and X. (Def. Mem. 11 n.8; Opp'n 6.)[2]

III. DISCUSSION

A. Arbitrability

Before addressing the scope of the Settlement Agreement, the Court confronts the antecedent question of who – the Court or an arbitrator – should decide whether the claims asserted by PRL trigger the Settlement Agreement's arbitration clause.

---

[2] Neither party seeks to compel arbitration of PRL's claims related to bedding products, and the Court declines to do so *sua sponte*. *See Lefkowitz v. Reissman*, No. 12-cv-8703 (RA), 2014 WL 925410, at \*8 (S.D.N.Y. Mar. 7, 2014) (suggesting that enforcing an arbitration clause *sua sponte* would be inappropriate where the issue had not been fully briefed or when neither party explicitly requested arbitration).

Arbitration is a matter of contract, and parties may be forced to arbitrate a dispute only when they have previously agreed to arbitration. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). To determine whether a dispute is arbitrable, therefore, a court must decide two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quoting *Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996)). In accordance with the Federal Arbitration Act ("FAA"), "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). However, the FAA requires the consent of a party to arbitrate, and a party can be forced to arbitrate only those disputes that both parties agreed would be submitted to an arbitrator. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001).

The presumption in favor of arbitration is reversed when the parties disagree about who, the court or an arbitrator, should determine the arbitrability of a claim. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995). When a contract does not expressly designate who should decide arbitrability, the court is the proper party to decide the question of whether the claim is subject to arbitration under the agreement. *Id.* The Second Circuit has recognized that "the issue of arbitrability may only be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (emphasis omitted); *see also PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1202 (2d. Cir. 1996). Here, the clear and unmistakable evidence of the parties' intent to have an arbitrator decide the arbitrability of their disputes flows from (1) the

6

arbitration clause's broad language and (2) its requirement that "[a]ny arbitration proceeding between the parties . . . shall be administered by the American Arbitration Association ("AAA") under the Commercial Rules," which explicitly provide that an arbitrator shall decide its own jurisdiction. (Settlement Agreement ¶ 16C.)

First, the broad language of the parties' Settlement Agreement indicates that the parties intended to arbitrate a wide variety of claims.  Specifically, the Settlement Agreement provides that arbitration shall be:

> the sole remedy for any dispute, action, claim, or controversy of any kind hereafter arising between [the parties] . . . in any way arising out of, pertaining to, or in connection with this Settlement Agreement (including, but not limited to, any claims for breach of this Settlement Agreement, claims that the party's trademark and/or trade dress rights have been infringed, and/or claims for federal or state unfair competition and/or dilution that fall with[in] the Settlement Agreement).

(*Id.* ¶ 16.)  Where an arbitration provision indicates an intent to arbitrate "any and all" claims, it reflects a "broad grant of power to the arbitrators" that evidences the parties' clear "inten[t] to arbitrate issues of arbitrability." *PaineWebber Inc.*, 81 F.3d at 1199–1200 (2d. Cir. 1996); *see also Shaw Group Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 124–25 (2d Cir 2003) (applying New York state law).  While the agreement here does not employ the precise "any and all" language of *PaineWebber*, its language – providing for arbitration "for *any* dispute, action, claim or controversy of *any* kind . . . in *any* way arising out of . . . the Settlement Agreement" – is even more capacious than the language referring to "any controversy or claim between [the parties] arising out of or related to the Agreement" that the Second Circuit labeled "classically broad" in a subsequent case. *See Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000).  Indeed, Judge Griesa recently characterized the arbitration provision of the very Settlement Agreement at issue here as "broad." *Ralph Lauren Corp. v. U.S. Polo Ass'n, Inc.*, No. 13-cv-7147 (TPG), 2014 WL 4377852, at *2 (S.D.N.Y. Sept. 4, 2014).

Second, the Settlement Agreement's incorporation of specific arbitration rules further indicates that the parties intended to have an arbitrator decide arbitrability.  Specifically, paragraph 16C of the Settlement Agreement provides:

> Any arbitration proceeding between the parties . . . shall be administered by the American Arbitration Association ("AAA") under the [AAA's] Commercial [Arbitration] Rules in the City and State of New York . . . .[3]

(Settlement Agreement ¶ 16C.)  The AAA's Commercial Arbitration Rules, in turn, state that "[t]he arbitrator shall have the power to *rule on his or her own jurisdiction*, including any objections with respect to the existence, scope, or validity of the arbitration agreement *or to the arbitrability of any claim or counterclaim*."  (Declaration of Jessica L. Margolis, dated May 16, 2014, Doc. No. 38, Ex. B (emphasis added).)  Thus, when considered in its entirety, the Settlement Agreement clearly contemplates that issues of arbitrability, across an extremely broad range of claims, will be resolved by the arbitrator.  Indeed, the Second Circuit reached a strikingly similar conclusion in *Contec.*  There, the parties had entered into a contract with a provision, like the clause at issue here, calling for arbitration "in accordance with the Commercial Arbitration Rules of the American Arbitration Association." *Contec*, 398 F.3d at 208.  Based on the contract's choice to incorporate the AAA's rules, which grant arbitrators the power to rule on their own jurisdiction, the court concluded that the contractual terms evidenced the parties' "clear and unmistakable" intent to delegate the question of arbitrability to the arbitrator. *Id*.  Thus here, as in *Contec,* it is the arbitrator, and not the district court, that must determine whether or not the allegations are claims covered by the Settlement Agreement and therefore subject to arbitration.

PRL's cases cited to the contrary miss the mark.  For example, in *Katz v. Feinberg*, a predecessor case to *Contec*, the Second Circuit stated that an agreement must demonstrate "clear

---

[3] There is no dispute that the reference to "Commercial Rules" in paragraph 16C of the Settlement Agreement is in fact a reference to the AAA's Commercial Arbitration Rules.  (Def. Mem. 15; Opp'n 38–39.)

and unmistakable" evidence of intent to arbitrate the question of arbitrability for the court to

relinquish jurisdiction. 290 F.3d 95, 97 (2d Cir. 2002). But in that case the contract specifically

provided that the particular claim at bar "shall *not* be subject to . . . arbitration," leading the court

to conclude that the text did not demonstrate a clear intent to arbitrate the arbitrability of the claim.

*Id*. (emphasis added). Similarly, the decision of the district court in *High Falls Brewing Co. v.*

*Boston Beer Corp.* is likewise inapposite. No. 10-cv-6100 (CJS), 2010 WL 2389168 (W.D.N.Y.

June 9, 2010). There, although the parties had entered into a contract that included a broad

arbitration clause and incorporated the Commercial Arbitration Rules of the AAA, the judge found

that the issue of arbitrability should be decided by a court because the claim at issue arose under

an entirely *different* contract with a forum selection clause directing any disputes to the New York

state or federal courts. *Id*. at *1. Accordingly, in that case, unlike here, there was no "clear and

unmistakable" evidence of an intent to arbitrate arbitrability. *Id*. at *7.

      Here, the language of the Settlement Agreement is both clear and unmistakable that the

parties intended to arbitrate the question of arbitrability. Therefore, the Court finds that the

question must be decided by an arbitrator, and not the District Court.

## B. Contempt

      Notwithstanding the Court's holding that the arbitrator should resolve issues of arbitrability

arising under the Settlement Agreement, it is for the Court to determine whether Defendants should

be held in contempt for violating the Court's 2005 Judgment and 2012 Injunction. Federal courts,

and federal courts alone, possess the "inherent authority to enforce their judgments," *Cardell Fin.*

*Corp. v. Suchodolski Assoc., Inc.*, 896 F. Supp. 2d 320, 328 (S.D.N.Y. 2012), and the FAA may

not be construed to divest courts of their traditional powers to police their own orders, *see Emilio*

*v. Sprint Spectrum L.P.*, No. 08-cv-7147 (BSJ), 2008 WL 4865050, at *2 (S.D.N.Y. Nov. 6, 2008).

A pending arbitration cannot prevent this judicial function, regardless of what the parties may have

privately agreed.  To hold otherwise would improperly permit an arbitrator to decide whether and

how to enforce a federal injunction.  As a result, Counts I, II, and XIII of PRL's complaint –

seeking that Defendants be held in contempt for violation the Court's 2005 Judgment and 2012

Injunction – are properly before the Court.  Accordingly, the Court will now address Defendants'

motion to dismiss PRL's contempt claims.

      To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns,*

*Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A

pleading that states a claim for relief must contain . . . a short and plain statement of the claim

showing that the pleader is entitled to relief . . . .").  To meet this standard, plaintiffs must allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If the plaintiff "ha[s] not nudged [its] claims

across the line from conceivable to plausible, [its] complaint must be dismissed." *Twombly*, 550

U.S. at 570.

      The Court has the power to hold a party in civil contempt when (1) there is a "clear and

unambiguous" court order; (2) there is clear and convincing proof that the party did not comply

with the order; and (3) the party has not been reasonably diligent in its attempt to comply with the

order. *Close-up Int'l, Inc. v. Berov*, 474 Fed. App'x 790, 793 (2d Cir. 2012).  Here the complaint

alleges the existence of two clear and unambiguous orders – namely, the 2005 Judgment and the

2012 Injunction. (Compl. ¶¶ 76–77, 140, 142.)  In addition, the complaint alleges that Defendants

knowingly violated those orders by utilizing marks that had previously been found to be infringing.

(Compl. ¶¶ 78, 80, 141–42.)  As exhibits to its complaint, PRL includes multiple samples of the

10

marks used by Defendants that it contends violated the Court's 2005 Judgment and 2012 Injunction. (Compl. Ex. I–L.) Specifically, PRL alleges that in certain materials and at certain sizes, the lines between the two horsemen in USPA's most recent images blur. (Compl. ¶¶ 61–62.) Having carefully reviewed the complaint and exhibits – which certainly appear to be the very mark specifically prohibited by the Court's 2005 Judgment – the Court finds that PRL has pled sufficient facts to support its contempt claims. Accordingly, Defendants' motion to dismiss PRL's contempt claims must be denied.

C. Timing

As noted above, it is for the Court, and the Court alone, to determine whether or not Defendants should be held in contempt for violating the Court's 2005 Judgment and 2012 Injunction. Nevertheless, there can be little doubt that PRL's contempt claims will be greatly simplified following arbitration. If the disputes are deemed arbitrable under the Settlement Agreement, then the arbitrator will undertake a thorough analysis of the allegedly infringing marks, which inquiry is likely to (1) substantially overlap with PRL's claims for contempt of this Court's orders, and (2) substantively inform the Court's consideration of PRL's claims related to bedding products. On the other hand, if the arbitrator determines that PRL's allegations of infringement, unfair competition, false designation, and dilution contained in the complaint are *not* arbitrable under the Settlement Agreement, then those causes of action will be back before the Court. Under either scenario, it seems clear that the Court's resources and those of the parties will be best conserved by staying this action pending resolution of the arbitration. Accordingly, to serve judicial efficiency, the Court will stay PRL's contempt claims and claims relating to bedding products pending the outcome of arbitration. *See generally Eatoni Ergonomics, Inc. v. Research in Motion Corp.*, 633 F. Supp. 2d 109, 116–17 (S.D.N.Y. 2009).

III. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' motion to compel arbitration is GRANTED with respect to PRL's claims III, V, VII, IX, and XI; in all other respects Defendants' motion is DENIED.  With respect to PRL's remaining causes of action, Defendants' motion to dismiss is DENIED.  Finally, IT IS FURTHER ORDERED THAT this action is STAYED pending the arbitrator's decision.  The parties are directed to submit a joint letter to the Court by June 1, 2015, and every 60 days thereafter, apprising the Court of the progress of the arbitration.  The parties shall also notify the Court within three business days of any final decision in the arbitration.  The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 36.

SO ORDERED.

Dated:        March 27, 2015
              New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

12